■ In the Matter of LOUISE SCALERA, as Coexecutor of DOMINICK SCALERA, Deceased, Appellant-Respondent. S & S CARTING Co., INC., et al., Respondents-Appellants. — In a proceeding to obtain a judicial dissolution of the S & S Carting Company, Inc. (hereinafter S & S Carting), in which the petitioner moved, *inter alia,* for enforcement of a stipulation of settlement of the proceeding, the petitioner appeals and S & S Carting and Dominick Salzano cross-appeal from stated portions of a judgment of the Supreme Court, Queens County (Buschmann, J.), entered February 18, 1982, which were in favor of petitioner and against S & S Carting and Salzano in the principal sum of $395,517.76 and in favor of S & S Carting and against petitioner in the principal sum of $51,120. Judgment reversed insofar as appealed from, on the law, without costs or disbursements, and matter remitted to the Supreme Court, Queens County, for entry of an appropriate amended judgment consistent herewith. The parties settled this corporate dissolution proceeding pursuant to stipulation. Under the terms of that stipulation, S & S Carting retained

what were denoted as formal refuse collection routes one and two while the estate was permitted to sell formal routes three, four and five. The estate was also authorized to sell "rolloff" work subsidiary to those routes and up to 50% of the remaining contract and spot rolloff work. The estate succeeded in selling formal route three back to S & S Carting and formal routes four and five to a competitor, V. Marangi Carting Co. Of the rolloff work, the estate sold V. Marangi Carting Co. the collection of stops shown on S & S Carting's books as route seven. The remaining rolloff work, denoted as routes six and eight, went unsold. Under the stipulation, the value of the unsold routes was to be set by the value of those which were sold. Thus, the price value of formal routes one and two was established by using the value established for formal routes three, four and five when they were sold. The negotiated price for rolloff route seven was also used to establish the corresponding value for rolloff route six. The question posed at bar is whether route seven's sale price should also be the standard by which the value of route eight is to be measured. S & S Carting contends that the stipulation recognized classes of rolloff work, which correspond to those stops denoted by it as routes six, seven and eight and argues that the intention of the parties as embodied in the stipulation was that rolloff work be compared within the respective classes. Its argument stems from paragraph 2 of the stipulation which provides in relevant part: "In addition to the formal routes, S & S picks up refuse at substantial sites which are not directly a part of the routes. Some of the pick-ups, or 'rolloffs', as they are known in the trade, are located at points which make [them] virtually a subsidiary part of formal routes. Mrs. Scalera may negotiate a sale of rolloffs which are considered 'subsidiary' to the routes she is being allowed to sell under paragraph 1 hereof. Mrs. Scalera shall also be allowed to negotiate a sale of approximately 50 percent as measured by the monthly collections of the remaining 'contract' and 'spot' rolloffs". The position of S & S Carting is that routes six and seven represent what paragraph 2 refers to as subsidiary rolloffs and that route eight represents "the remaining 'contract' and 'spot' rolloffs". Route eight, it argues, could only be valued if some portion of it had been sold. The estate contends that paragraph 4 (b) (ii) of the stipulation mandates that all rolloffs should be valued the same. That provision assumes that *"all* routes and *all* rolloffs of S & S have the *same* market value as compared to monthly collections as to the weighted average *of those sold"* (emphasis added). The parties do not attempt to litigate the fair market value of route eight but only the valuation to be afforded it under the stipulation. The petitioner is correct. The only distinction in paragraph 2 of the stipulation is between subsidiary and nonsubsidiary rolloffs. Subsidiary rolloffs differ from the "remaining 'contract' and 'spot' rolloffs" in that the former have a locational nexus with the formal routes described in paragraph 1 of the stipulation. The plain purpose behind this distinction was to avoid the limitation on sales applicable to the nonsubsidiary rolloffs and to permit the estate to sell the subsidiary rolloffs in the most commercially attractive manner, i.e., in conjunction with one or more of the formal routes. The stipulation does not otherwise distinguish between subsidiary rolloff and spot work as S & S Carting suggests. The interpretation of S & S Carting that the phrase "remaining 'contract' and 'spot' rolloffs" pertains to route eight is premised on the notion that the term " 'contract' " is synonymous with, and redundant to, the term " 'spot' ". This view, however, is plainly contradicted by the stipulation's use of the conjunctive, not the disjunctive, in linking the two terms. The interpretation of S & S Carting is also belied by its own expert, Spinelli, who distinguished between contract and spot work. According to Spinelli, a contractual or semicontractual relationship is the hallmark of regularity and the source that engenders saleable goodwill. Spot work differs because it lacks the regularity that springs from a contrac-

tual or semicontractual relationship. The plain meaning of the phrase "remaining 'contract' and 'spot' rolloffs" therefore is that it refers to both regular and irregular rolloffs. Had the parties intended otherwise, it would have been a simple matter to refer to route eight. Yet, strikingly, the only references to specific routes are to the formal routes one to five mentioned in paragraph 1 of the stipulation. Paragraph 4 (b) (ii), which contains the stipulation's valuation formula, also fails to distinguish between rolloffs but rather explicitly assumes that *"all* routes and *all* rolloffs of S & S have the same market value as compared to monthly collections as to the weighted average of those sold" (emphasis added). To the degree a distinction is made it is between the formal routes and the rolloffs in the last sentence of paragraph 2, which directs that "[i]f a single potential purchase includes several formal routes and/or rolloffs, the price for each formal route and for the rolloff to be purchased shall be stated *separately* in the contract" (emphasis added). The purpose of that language was to facilitate S & S Carting's right of first refusal in case the formal routes and rolloffs brought different prices. Markedly absent is any provision for a further breakdown of price according to types of rolloff. The import of the stipulation's silence is that no differentiation was intended among the rolloffs. Consequently, route eight should be valued in the same fashion as route seven. We have considered the parties' remaining contentions and find them to be without merit. Titone, J. P., Lazer, Gibbons and Weinstein, JJ., concur.